IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          *Plaintiff*,<br><br>v.<br><br>DONTAE GORDON,<br><br>          *Defendant.* | Criminal No. 2:19-cr-141 - 1<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Pending before the Court is Defendant Dontae Gordon's ("Gordon") Motion to Dismiss Information Charging Prior Offense. (ECF No. 113). Gordon has lodged a very serious accusation of prosecutorial vindictiveness against the Government. (ECF No. 113). Essentially, he faults the Government for the timing of its filing of the 21 U.S.C. § 851 Information against him arguing that it was to "punish" him for seeking a release from detention and "winning" his release. (ECF Nos. 113 and 119). The Government has taken umbrage with Gordon's motion and, in defending its prosecution of the case, argues that a presumption of prosecutorial vindictiveness does not apply and that Gordon has failed to come forth with actual evidence of vindictiveness. (ECF No. 117). After careful consideration of this matter, the Court denies Gordon's motion for the following reasons of law and fact.

### I. STANDARD OF REVIEW

It is well-established that "prosecutorial vindictiveness" may constitute a due process violation because "for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" *Bordenkircher v.*

1

*Hayes*, 434 U.S. 357, 363 (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 32–33 n.20 (1973)). Normally, a criminal defendant must offer proof of "actual vindictiveness" in order to assert a due process claim. *See United States v. Esposito*, 968 F.2d 300, 303 (3d Cir. 1992); *see also United States v. Paramo*, 998 F.2d 1212, 1220 (3d Cir. 1993) (defendant has the burden to establish prosecutorial vindictiveness). Only in the rare circumstances where "a reasonable likelihood of vindictiveness exists" does the Third Circuit Court of Appeals recognize a "presumption of vindictiveness," which allows a defendant to bring a constitutional claim without offering any concrete proof of improper governmental motive. *Id.* With respect to a presumption of vindictiveness, the Third Circuit has explained:

> The presumption of vindictiveness is a prophylactic rule designed to protect a defendant's due process rights where a danger exists that the government might retaliate against him for exercising a legal right. Because such a presumption may operate in the absence of any proof of an improper motive, courts will apply it only where there exists a realistic likelihood of vindictiveness. Even if a defendant establishes a realistic likelihood of vindictiveness, however, the government still has an opportunity to proffer legitimate, objective reasons for its conduct. Where the government's conduct is attributable to legitimate reasons, we will not apply a presumption of vindictiveness.

*Paramo*, 998 F.2d at 1220 (internal citations and quotation marks omitted).

## II. RELEVANT PROCEDURAL HISTORY

Gordon was indicted by a federal grand jury on May 14, 2019. (ECF No. 1). The Indictment Memorandum specifically stated as to the penalty for Count 2: "[f]or a second or subsequent felony drug conviction that is final, whether federal, state, or foreign: 1. A term of imprisonment of not more than thirty (30) years." (ECF No. 2, p. 4). An arrest warrant was issued for Gordon that day. (ECF Nos. 6 and 7). Gordon was eventually arrested in September 2019, and arraigned before United States Magistrate Judge Patricia L. Dodge on September 12, 2019. (ECF No. 11). CJA Panel Attorney James Paulick, Esq. was appointed as counsel. (ECF

No. 13). During the arraignment, the Government specifically stated that, as to Count One, the maximum term of imprisonment was not more than 20 years, but for a "second or subsequent felony drug conviction that is final [. . .] the maximum penalty is a term of imprisonment of not more than 30 years." (ECF No. 117, Ex. B at 4:00-4:33). Gordon confirmed that he understood the charges and maximum penalties. (ECF No. 117, Ex. B at 5:21-5:33).

The United States requested that Gordon be detained pending trial. (ECF No. 21). A detention hearing occurred on September 16, 2019, before Magistrate Judge Lisa Pupo Lenihan. (ECF Nos. 19, 21). She found a rebuttable presumption arose under 18 U.S.C. § 3142(e)(3) and that Gordon had not introduced sufficient evidence to rebut the presumption. It was Magistrate Judge Lenihan's conclusion that clear and convincing evidence existed that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. In addition to the findings made on the record, Magistrate Judge Lenihan's reasons for detention included the following: weight of the evidence against defendant is strong; subject to a lengthy period of incarceration if convicted; prior criminal history; participation in criminal activity while on probation, parole, or supervision; history of violence or use of weapons; and, prior violations of probation, parole, or supervised release. (ECF No. 22).

On or around September 18, 2019, Gordon obtained private counsel, William Difenderfer, Esq., to represent him and Attorney Paulick withdrew as counsel. (ECF No. 24-26). The case was assigned to the Honorable Arthur J. Schwab who conducted a status conference with counsel on October 30, 2019. (ECF No. 33). The next day, October 31, 2019, Attorney Difenderfer filed a motion to withdraw which, after a status conference with counsel, Judge Schwab granted. (ECF Nos. 34, 35, 37). Nichola Henry-Taylor, Esq. was appointed as CJA counsel effective October 31, 2019. (ECF No. 38).

A status conference occurred on January 22, 2020. Gordon was present and, at that time, the Government informed Judge Schwab that the parties "had been in preliminary plea negotiations," and a disagreement existed as to whether Gordon would be classified as a career offender. (ECF No. 115, p. 3). The Government noted that the completion of a Pre-Plea Presentence Investigation Report ("PSIR") would resolve that matter, but Gordon was unwilling to have one completed. (ECF No. 115, p. 3). Attorney Henry-Taylor represented that such a report was "not how he wants to proceed," and that a "career offender is a huge barrier," such that Gordon wanted to proceed to trial. (ECF No. 115). Judge Schwab noted that a Pre-Plea PSIR should have been ordered much earlier and "not now on the eve of trial." (ECF No. 115, p. 3). A trial date was set for May 27, 2020, and Judge Schwab ruled that a suppression motion had to be filed by February 4, 2020, and if a motion was filed, oral argument would occur on March 2, 2020. (ECF No. 115, p. 6; ECF No. 52). Gordon was informed by Judge Schwab that March 2, 2020, "will also be an alternative change of plea date and that will be the last date I would approve the one point for timely acceptance of responsibility since obviously, once we start into the hearing, the Court will have begun allocating resources to this case." (ECF No. 115, p. 7). Attorney Henry-Taylor concluded the hearing by stating that the defense intended to request a new detention hearing. (ECF No. 115, p. 7).

On February 4, 2020, Attorney Henry-Taylor filed a notice regarding the suppression motion due that day stating in pertinent part, "undersigned counsel has concluded that there are no constitutional defects within the warrant, in the execution of the manner in which the statement was recovered by the arresting officers [. . .]." (ECF No. 54). Judge Schwab set a status conference for March 2, 2020. (ECF No. 55). On February 21, 2020, through Attorney Henry-Taylor, Gordon filed a Motion to Review Detention Order. (ECF No. 57). On February

4

27, 2020, Magistrate Judge Lenihan granted the motion and scheduled a detention hearing for March 13, 2020. (ECF No. 58).

At the March 3, 2020 status conference before Judge Schwab, Attorney Henry-Taylor made a motion to withdraw as counsel. (ECF No. 59). In outlining a number of issues between her and Gordon, she specifically stated:

> He also has indicated that he doesn't understand why he does not have a plea offer today. I will give you my position and, obviously, the Court can hear from others.
> He is at this point appearing to be a career offender. That leaves us very limited options as far as pleas.
> The U.S. Attorney and I have discussed very generally the fact that he may disagree with the law that ultimately he may be a career offender, however, as far as his interpretation of the law at this point and his office's interpretation, my client would be a career offender.
> We also discussed the potential of doing an open plea with the condition that if my client were to be determined based on the law, and I believe there are some matters that are on appeal right now with respect to this issue, that my client could appeal that. That has been – that information has been given to my client. He's aware of that.
> The plea that I believe my client desires, which would be an 11(c)(1)(C) of a certain number of years, I don't believe that's something that the U.S. Attorney would be comfortable offering.

(ECF No. 109, p. 4). Judge Schwab denied the motion for Attorney Henry-Taylor to withdraw, explaining to Gordon, "we're not just going to keep working through the list until you find somebody that makes you happy." (ECF No. 109, p. 8). However, he afforded Attorney Henry-Taylor the opportunity to reach out to the Federal Public Defender's office to see if they would accept the case. (ECF No. 109, p. 9) (ECF No. 59). The existing trial date of May 27, 2020 was kept in place. (ECF No. 109, p. 10). Notably, Gordon, himself sought and received thirty more days to contemplate a guilty plea – until April 6, 2020. (ECF No. 109, p. 14) (ECF No. 59). Judge Schwab scheduled a status conference for April 6, 2020. (ECF No. 59).

Gordon sought a continuance of his detention hearing and Judge Lenihan rescheduled it for April 3, 2020. (ECF No. 60 and 61). On March 25, 2020, Assistant Federal Public Defender Khashayar Attaran, Esq., was appointed as counsel for Gordon. (ECF No. 63). Judge Schwab recused from the case that day, and the case was assigned this judge on March 26, 2020. (ECF NO. 64). Attorney Henry-Taylor was permitted to withdraw as counsel. (ECF No. 69). Attorney Attaran immediately sought an extension of time to file pretrial motions, which the Court granted and it terminated the status conference set for April 30, 2020, so as to afford Attorney Attaran more than adequate time to review the case. (ECF No. 67). The due date for pretrial motions was set at June 25, 2020. (ECF No. 67).

A Motion for Pretrial Release was filed by Gordon on April 1, 2020, as a means of setting forth additional information for Magistrate Judge Lenihan's consideration at the April 3, 2020 detention hearing. (ECF No. 71). Magistrate Judge Lenihan held a telephone conference with the parties on April 2, 2020, and noted that at the next day's proceeding she would "review the revised and corrected pretrial services report, hear evidence about the new release plan, including residence, and hear testimony from a proposed third[-]party custodian." (ECF No. 72). No other witnesses would be permitted to testify. (ECF No. 72).

At the April 3, 2020 hearing, Magistrate Judge Lenihan determined that pretrial release was appropriate, and conditions could be imposed upon Gordon to assure the safety of the community. (ECF No. 74; ECF No. 81, p. 32). More specifically, she stated that her initial finding that Gordon committed an offense on probation or parole on nine occasions was incorrect, and it was actually only four occasions, most of which occurred when Gordon was younger. (ECF No. 81, p. 30). She noted to Gordon that "meeting your wife was one of the best things that ever happened to you," and further noted the support of Gordon's wife and her church

6

was evidenced by the letters submitted on his behalf. (ECF No. 81, p. 30). What had changed since the first detention hearing, in Magistrate Judge Lenihan's opinion, was Gordon's community ties, release plan, and third-party custodian. (ECF No. 81, pp. 30-31).

During the proceedings, Attorney Attaran, who remains Gordon's current counsel, specifically stated on behalf of Gordon:

> What he's asking is to be released pending his trial or his plea or his sentencing so he can get his affairs in order, so that he can show the next judge what he has done since he has changed his life around. That's ultimately, as Your Honor knows, going to help him reduce his sentence if he does plead guilty and since he has fessed up to this already.

(ECF No. 81, p. 25).

Magistrate Judge Lenihan ordered that Gordon post an unsecured bond of $10,000.00. (ECF No. 81, p. 32). He would be placed on electronic monitoring with home detention, with permission for preapproved activities (e.g., work, religious services, court appearances, attorney meetings). (ECF No. 81, pp. 33-34). As to conditions of release, Gordon was ordered: not to violate local, federal or state laws; continue to seek employment and have a job available once the COVID 19 pandemic concluded; surrender his passport; not travel outside the Western District of Pennsylvania; avoid all contact with anyone who is a victim or witness in this investigation; not possess a firearm; not use alcohol excessively; not use or possess any narcotic drugs; submit to drug testing; submit to substance abuse therapy, if pretrial deems it advisable; if employment was obtained, pay all or part of the cost of the electronic monitoring program; and, report pretrial contact with any law enforcement offices. (ECF No. 81, pp. 33-34; *see also* ECF No. 76).

The Government appealed the Order that day seeking *de novo* review under 18 U.S.C. § 3145. (ECF No. 78). After briefing, the Court concluded that Gordon met his burden to rebut

the applicable presumption of detention under § 3142(g). Its probing examination of the record led it to conclude that the Government did not establish by clear and convincing evidence that no condition or combination of conditions would reasonably ensure the safety of the community if Gordon was released. In an April 24, 2020 Memorandum Opinion and Order, it found that continuing Gordon's pretrial detention was not warranted. It denied the Government's Motion to Revoke Order of Release. (ECF No. 88). Magistrate Judge Lenihan's April 3, 2020 Order (ECF No. 76) releasing Gordon pending trial subject to certain conditions was affirmed and reinstated by the Court and the United States Marshal was directed to coordinate the release of Gordon. (ECF No. 89).

On May 15, 2020, the Government filed an Information to Establish Prior Conviction. (ECF No. 91). In it, the Government noted that Gordon "was convicted on or about March 17, 2015, in the Court of Common Pleas, County of Allegheny, Criminal Division, Commonwealth of Pennsylvania, at Docket Number CP-02-CR-0008602-2014, of the crime of Possession with Intent to Deliver a Controlled Substance (Heroin)." (ECF No. 91, p. 1). It went on to state that the "the enhanced sentencing provisions set forth in Title 21, United States Code, Section 851 are applicable [. . .]." (ECF No. 91, p. 2). Later that same day, Gordon sought to modify the conditions of his release, which the Court granted on May 18, 2020, permitting him to work.[1] (ECF No. 92). Gordon then sought two extensions of time (on June 25, 2020 and on August 24, 2020) to file his pretrial motions, and they were ordered to be filed by October 23, 2020. (ECF Nos. 96-99). Then, on September 24, 2020, Gordon sought a Pre-Plea PSIR. (ECF No. 100). The Court granted that motion as well as a consent motion to extend the due date for pretrial motions until January 21, 2021. (ECF No. 100-103). The Pre-Plea PSIR was produced to the

---

[1] In January 2021, the Court permitted Gordon to be with his wife at Magee-Womens Hospital for three days for the birth of their child. (ECF No. 112).

parties on November 23, 2020, and the Government has represented that it confirms Gordon is a career offender. (ECF No. 104) (ECF No. 117, p. 7).

251 days (8 months and 6 days) after the Government filed its § 851 Information, and on the day his pretrial motions were due, January 21, 2021, Gordon filed the motion at issue alleging prosecutorial vindictiveness. He filed no other pretrial motions.

### III. ANALYSIS

Gordon has failed to establish a presumption of prosecutorial vindictiveness or that the Government acted with actual vindictiveness.

The Third Circuit has explained:

> [B]y tolerating and encouraging the negotiation of pleas," our system "has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right" to proceed to a jury trial. *Bordenkircher*, 434 U.S. at 364, 98 S.Ct. 663. In other words, "in the 'give-and-take' of plea bargaining, there is no ... element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id.* at 363, 98 S.Ct. 663.

*United States v. London*, 747 F. App'x 80, 83 (3d Cir. 2018). Unlike "a change in the charging decision made after an initial trial is completed," a pretrial decision to pursue enhanced charges does not automatically trigger a presumption of vindictiveness. *United States v. Goodwin*, 457 U.S. 368, 381 (1982); *see also Esposito*, 968 F.2d at 303 ("We will adopt such a presumption only in cases in which a reasonable likelihood of vindictiveness exists."). The Supreme Court has stated that a prosecutor "should remain free before trial to exercise ... broad discretion" to alter or even increase the charges pending against a defendant to the limits that the law allows. *Goodwin*, 457 U.S. at 382.

The Court is unwilling to find that a presumption of vindictiveness exists. The circumstances do not suggest that the Government's decision to file the § 851 Information was

retaliation against Gordon for obtaining pretrial release. While Gordon's current counsel, his fourth, states that "no formal plea offer," was made between the time he was appointed on March 25, 2020 "up to Mr. Gordon's release," which was on or about April 24, 2020 (ECF No. 119, p. 6), the fact of the matter is that this case has been pending since September of 2019. Gordon is on his second judge and fourth attorney. There is no question that informal plea discussions occurred, and that the sticking point with negotiations has been Gordon's refusal to accept his classification as a career offender and the ramifications that brings to sentencing. Notably, Gordon resisted one of his prior attorney's suggestions to obtain a Pre-Plea PSIR and he only sought one approximately four months after the Government filed the § 851 Information. The Court exercised its discretion in granting Gordon's request for a Pre-Plea PSIR knowing that Judge Schwab, in January of 2020, had informed Gordon that the time had passed to obtain a Pre-Plea PSIR. (ECF No. 115, p. 3). Additionally, the Court granted a number of continuances to the parties after the case was assigned to it in March 2020 so as to afford adequate time for continued discussions.

It is also significant to the Court that the Government sought no new charges – it merely established Gordon's prior conviction. The text of 21 U.S.C. § 851 specifically states:

> (a) Information filed by United States Attorney
> (1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

18 U.S.C. § 851(a)(1). The statute does not state how long before trial or a guilty plea the information must be filed. Furthermore, despite Gordon's complaints, the Government was under no obligation to inform any of his attorneys that it intended to file a § 851 information. All

the statute states is that the Government must file the Information "before trial" or "before entry of a plea." Notably, in the pretrial setting, where "the prosecutor's assessment of the proper extent of prosecution may not have crystallized," timing alone cannot support a vindictive prosecution claim. *Goodwin*, 457 U.S. at 381; *see also id.* at 380 ("An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution.").

Thus, to the extent Gordon contends that the filing of the § 851 Information came without warning, the record completely belies his argument. Since the inception of his case, Gordon knew the filing of a § 851 Information was possible. The Government filed the § 851 Information on May 15, 2020, which was well before Gordon's pretrial motions were originally due (on June 25, 2020). It appears to the Court that the Government simply reached a point where it was exacerbated with Gordon's constant changing of counsel, refusal to acknowledge the applicability of the career offender designation or seek a Pre-Plea PSIR, and the April 2, 2020 deadline set by Judge Schwab for Gordon to accept responsibility passed such that it believed plea negations had stalled.[2] (ECF No. 117, p. 13). The Government then seemingly sought to move this case along by establishing on-the-record Gordon's prior convictions through the filing of the § 851 Information.

The record establishes that the Government's advocacy for Gordon's continued detention was an entirely separate matter from its filing of the § 851 Information. The Government has noted that "[p]re-trial detention battles are routine, and prosecutors typically have no 'stake' in

---

[2] The Court is well aware of the Department of Justice's ("DOJ") charging policy from May 2017 through January 2021 known as the "Sessions Memo" that required the filing of an § 851 Information whenever a defendant was eligible. The Government has represented that in this district, "[a]s a practical matter, prosecutors often wait to assess whether plea negotiations bear fruit before doing so." (ECF No. 117, p. 13).

their resolution one way or another, [ ] beyond general societal interests." (ECF No. 117, p. 3). At the hearing before Magistrate Judge Lenihan requesting the reopening of its detention decision, the Government argued for continued detention primarily because of the serious nature of the case, the weight of the evidence against Gordon including his videotaped confession, his substantial criminal history and what it viewed to be a "bad" release plan. (ECF No. 81, pp. 27-28). When the Government appealed Magistrate Judge Lenihan's decision to release Gordon, its advocacy to the Court focused on its belief that Gordon failed to rebut the presumption of detention, and no release conditions would reasonably assure the safety of the community. (ECF No. 83). It noted that Gordon was likely a career offender, and outlined his convictions as set forth in the Pretrial Services Report which included convictions on fifteen charges, including six felony charges. (ECF No. 83, pp. 1, 8-9; ECF No. 87, p. 4). After Gordon was granted release, the Government lodged no objections to two of his requests for modifications of the conditions of his release. (ECF No. 94, 110). The modification it objected to, understandably, was Gordon's motion to travel to take a vacation at a luxury resort and spa in Scottsdale, Arizona – the Court denied this travel request. (ECF Nos. 105 and 107). The Court would note that Gordon has been compliant with the conditions of his pretrial release.

Nothing about the state of the record allows the Court to draw the conclusion that a presumption of vindictiveness exists from the mere fact that the § 851 Information was filed approximately a month after Gordon obtained pretrial release. The Court holds, in light of the history and context of this case, that the presumption of vindictiveness does not apply.

In the absence of the presumption of vindictiveness, Gordon had to demonstrate that the Government's decision to file a § 851 Information was motivated by actual prosecutorial vindictiveness. *See Goodwin*, 457 U.S. at 384 (in the absence of a presumption, a defendant may

12

"prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do"). It is "exceedingly difficult" to prove actual vindictiveness. *Paramo*, 998 F.2d at 1221. Put another way, the objective evidence must establish that the Government's action was "solely" to punish Gordon for exercising a guaranteed legal right. *See Goodwin*, 457 U.S. at 380 n. 12; *see also Paramo*, 998 F.2d at 1221 ("To prove actual vindictiveness, [the defendant] must show that the prosecutor withheld a 5K1.1 motion solely to penalize him for exercising his right to trial."). He has failed to do so.

Gordon's only basis for demonstrating actual vindictiveness is his own unsupported assertion that the Government filed the § 851 Information because he successfully obtained pretrial release. No evidence exists that the prosecuting attorney harbored ill will against Gordon, and Gordon has pointed to no specific instances of wrong-doing on the part of the prosecutor during the pendency of his case. Gordon's unsupported conclusory allegations of vindictiveness are insufficient to meet his burden of proof of coming forth with evidence that the Government acted improperly in filing the § 851 Information. He has not pointed to any evidence which can reasonably be said to prove that the Government's decision to file the § 851 Information was solely due to Gordon obtaining pretrial release. There is no basis upon which to conduct an evidentiary hearing. *See Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987) ("[B]ald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing."); *see also United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006) (rejecting argument that prosecutor's filing of a § 851 Information during plea negotiations, without more, was sufficient evidence of actual vindictiveness); *United States v. Trader*, No. 04-680-06, 2015 WL 4941820, *11 (E.D. Pa. Aug. 19, 2015) (unsupported allegation – that the

Government only filed the § 851 Information because attempts to force defendant to plead guilty and/or cooperate failed – do not afford a sufficient basis for conducting an evidentiary hearing).

## IV. Conclusion

The Court's review of the record does not support Gordon's claim of prosecutorial vindictiveness. He has failed to establish a presumption of prosecutorial vindictiveness or that the Government acted with actual vindictiveness. Gordon's motion will be denied by separate order, and this matter will be set for trial.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

3-15-21
Date